Ms. Keevil, am I pronouncing your name correctly? Depends which relative you ask. There was a judge on the 7th circuit who pronounced his last name differently from his wife. May it please the court, counsel. My name is Shira Keevil and I am a federal public defender. I represent Brandon Richardson. The Oklahoma District Court committed procedural error in this case because it imposed a partially consecutive sentence without first applying the directives in Section 5G 1.3D and Application Note 4 as required, and in particular, the core underlying directive to avoid unwarranted sentencing disparities that arise from the fortuity of interrelated conduct being sentenced in separate proceedings. This court should reverse. The key to the district court's mistake, I think, is its refusal to acknowledge the existence of any overlap between the Oklahoma conduct and the Missouri sentence. The Oklahoma firearm was one of many acts that were sanctioned in the Missouri District Court because it was relevant conduct that the Missouri court knew about and was required to consider in formulating its sentence. I want to make sure I get your statement. The key to the error was the court's failure to recognize the overlap between the Oklahoma charge and the Kansas sentence. Correct. Missouri sentence. That's right, Your Honor. So instead of recognizing this overlap with the Oklahoma court, mistakenly concluded that Mr. Richardson's Oklahoma firearm possession was independent of the proceeding in Missouri, and so it still needed to receive some consequence. What do you mean by overlap? Do you mean relevant conduct? Yes, that it was something that was in the pre-sentence report. It was as offense conduct in the pre-sentence report. It is what the district court, even in Oklahoma, said was obviously something that occurred during flight. Nobody objected to it in the Missouri court. It is relevant conduct in the Missouri court that the judge there knew about and was required to consider not just by the guidelines but by the 3553A factors. Does the firearm found in Oklahoma have, you say, found during flight? And, of course, this isn't someone escaping a bank robbery and shooting out the back window at the cops, which is one thing. In that instance, the firearm certainly is relevant conduct to the bank robbery. But here, weeks have passed. Is that right? I believe some time has passed, Your Honor. But there's state charges that are pending. And this is a person who liked to carry a firearm even before leaving for Oklahoma, right? Got charged with that in Missouri. I mean, there is one prior instance known of him carrying a firearm, yes. And no court ever found that the Oklahoma possession of the firearm, not the fleeing, the possession of the firearm, the act that 1B1.3 references to, no court ever found that that possession of the firearm was relevant conduct to the Missouri charge. I disagree with that, Your Honor. Point me to the place. So I think that when we have a pre-sentence report that lists it as offense conduct in a very short list of specifically what is Mr. Richardson's role in the offense, and nobody objects to it, and as the Oklahoma court said, it's obvious that it's something, an act committed during flight, that that is adopted by the district court in Missouri and incorporated into his sentence as one of the acts that are punished there. So 1B1.3 is no more precise than whatever a probation officer includes in offense conduct, which is not relevant conduct. It can exceed that. You agree? Your Honor, I think that when I was a district court lawyer, I objected if it was something that was not relevant conduct. I brought it up. We talked about it. It wasn't relevant conduct in Missouri as far as a specific offense characteristic, an adjustment, addition to the base offense level, correct? There were no two levels added because he had a firearm in Oklahoma. And I want to – I think that's a really important question, Your Honor, because this court has made very clear that there is a difference between relevant conduct and conduct that gives rise – well, relevant conduct is a larger group, and only some of the relevant conduct is something that gives rise to an increased offense level. So you could imagine a situation, Your Honor, where he was found with two guns inside of – in Missouri, and those two guns were the basis of his 922G conviction and then 924C in Missouri. The second gun would not raise the offense level in that case, but unquestionably would have been relevant conduct in that case. I'm not understanding your relevant conduct analysis. When I look at 1B1.3A, what it tells me is unless otherwise specified, which is the defendant instead of relevant conduct broader, the base offense level, where the guideline specifies more than one base offense level, specific offense characteristics, cross-references, and adjustments shall be determined on the basis of the following. And then it tells us what acts or omissions. Yes. And so the acts or omissions that count for relevant conduct are the acts or omissions that count for those things that are specified, specific offense characteristics, adjustments, cross-references, so forth. Other conduct may be conduct, but it's not relevant conduct. For it to be relevant conduct, it has to be relevant to those things. And, Your Honor, my understanding of relevant conduct is that relevant conduct is something that could give rise to an increased offense level. But this court said in United States v. Torres that something can be used to calculate the offense level or otherwise be relevant conduct. Back to my original question, which I don't think has been answered yet. Could the Oklahoma firearm possession have led to an increase in specific offense conduct, adjustments, cross-references in the Missouri case? And I think the answer is plainly no, but you haven't said yes or no. So I think that I'm not 100% sure I understand your question, so let me try to clarify. I think that if there were something that said add three points if you possess a firearm during flight, then yes, this could have been used for that. That's the definition of relevant conduct. And, Your Honor, I think that the definition for relevant conduct is different, which is what United States v. Torres said. Relevant conduct is conduct that is closely enough related to the crimes of conviction that it could be used to raise an offense level if an appropriate offense level was there. So, again, if you have a 922G case and you have someone with two firearms, both of those firearms are relevant conduct, even though you only get an enhancement if you have three firearms. If you had a third firearm, that doesn't somehow transform that second firearm into relevant conduct when it wasn't previously. It is relevant conduct that the court is required to consider when it's formulating its sentence. It's not relevant conduct. What it is is conduct the court can consider in a one episode. This involves two states with two episodes. If you have one person with two firearms, they're not going to get the three-gun enhancement, I agree. But a district court in deciding where in the range or even going outside of the range certainly can consider that. But that's not relevant conduct as defined by this book. Your Honor, I understand how you're reading it. I believe that the language is susceptible to both meanings and that this court has definitively decided this in United States v. Torres, which is in our briefs. And I also want to just briefly discuss the record in Missouri, and this is in the pre-sentence report in Missouri that the Oklahoma judge possessed. This was not a single state drug conspiracy. This was a multi-state drug conspiracy that took place in both Missouri and Oklahoma. One of the sources of drugs that is listed in the pre-sentence report in Missouri is Oklahoma. Do we have that? Do we have the Missouri PSR? The district court judge had it, mentioned having it. I've asked this court to recognize it from the sister docket. But we don't have it as the answer, right? I don't believe there's any other way for me to put it on the record since it was not included on the record below. But I do believe that there is nothing wrong with taking judicial notice of it in this situation. How can we if we haven't seen it? Your Honor, I referenced it and gave the citation. There's no other way for me to present it under the rules of this court to the court. If there's another way you'd like me to present it so that I can do it under seal, it's not properly an appendix, it's not properly part of the record on appeal, I'm very happy to present it. Have you seen it? Yes, Your Honor. And you couldn't produce it to us under seal? Your Honor, there's no specific way for me to do it. I'm saying I'm very happy to do it. The reason that I didn't is because it is on the docket accessible by the court. In the Missouri case, I cited directly to that docket number. And I'm very happy to file a motion and ask that to be added somehow to the record in this case. But it was not part of the docket below, and so it's not on the record on appeal in this case. All right, thank you. Let me go back to that first statement you made that I want to rely on. You say that the key to the mistake was the failure to recognize the overlap between the Oklahoma offense and the Missouri sentence. And how do you know that the district court failed to recognize that overlap? Well, the district court made two very clear statements. One of them was is the possession of the weapon down here is independent of the proceeding in Missouri. And the other is there has to be some consequence to your possession of the weapon here in Oklahoma. And did the defense counsel at the sentencing proceeding object to any of those statements and say, Your Honor, you're wrong. It did affect the sentence there, and these two . . . and it's not independent. Was that the error that you think . . . the evidence that the judge wasn't considering it was in two statements? Did the defense attorney object to either of those statements and say, Judge, you're getting this wrong? Your Honor, the objection that was made that preserved this and that the government acknowledges . . . Well, I'm not sure I agree with the government that it was preserved, so that's why I'm . . .  The defense attorney said, now that we agree that 5G 1.3 applies, like, give concurrent sentences because of this overlap. This was slight. This was in the PSR. I gave you the PSR from Missouri. So, he preserves it there by explicitly arguing the overlap to this district judge. The district judge then says, no . . . Let me say that again. I want to make sure I understand what the defense attorney said. So, the defense attorney said, this is in response to the statement by the judge that shows the judge misunderstood, did not recognize the overlap. So, the judge says something that suggests the judge did not recognize the overlap. And then the defense attorney said something in response, saying you got it wrong? No, Your Honor. Well, isn't that how you have to object? Your Honor, if you ask the court to make a specific ruling, you give the basis for that, which here the defense attorney did. He primarily argued 5G 1.3b, but said in all the alternative that 5G 1.3d applies. So, he asked for . . . what he was asking for was fully concurrent sentences. The law he asked the judge to apply in the alternative was 5G 1.3d. And the reasoning that he gave was the factual overlap between this charge and what had already been sentenced in Missouri. That was the original argument. You don't have to preserve again by saying, judge, no, no, I already argued this. You already got it wrong. I'm going to argue it again. How long was that before the judge made either of the two statements that you say show the judge did not recognize the overlap? Yes, that's in his sentencing memo. It was in the sentencing memo. The sentencing memo, in my remembrance, I can double check when I'm sitting down, is that he argues both in the alternative. In the sentencing memo, not at the sentencing hearing. And also at the sentencing hearing. The whole basis of his request is the overlap. There's nothing that he could possibly have done to bring more attention to this overlap. The district court disagreed, but you don't need to preserve the mistake again once it's already . . . you've already made your argument. You think the district court disagreed and thought there was no overlap? Well, I think that the best way to read this when he says the possession of the weapon down here is independent of the proceeding in Missouri, there's no overlap. Excuse me. When he again says there has to be some consequence to your possession . . . Judge, you're saying the judge couldn't have said that if he recognized that the PSR in Missouri mentioned the crime? Could the judge have said that just because looking at the sentence and the whole kit and caboodle for Missouri, because he did have the PSR. He did not think that that . . . that the Oklahoma offense affected the sentence in Missouri? No, Your Honor. I don't believe that he could have made that finding. I think if . . . maybe the government could put on more evidence and somehow prove that. But, I don't think that that is a finding the district court could have made with what it had in front of it. What it had in front of it showed a clear connection. I think there . . . you know, the government thinks that we're making a substantive reasonable disargument. This could never have been consecutive. We're not making that argument. I think there are things that the court could have said. I disagree with the sentence that was handed out in Missouri. I think more punishment is necessary. He has discretion. But, what the judge was not allowed to say was this factually inaccurate thing or a misunderstanding of the relevant law where he says, you know, this possession is just independent of everything that happened at that proceeding. That's simply not correct and that can't support the sentence given the directives in 5G 1.3D. If I may reserve the remainder of my time. Thank you. Mr. West. Thank you, Your Honors. And may it please the court, stand less of the United States. Your Honors, in this case, the district . . . this court should affirm the district court. Your Honor, to begin, the district court . . . so this . . . my understanding is that this argument and this . . . essentially the whole reason why we are here is that there's an argument that the district court did not appropriately consider an appliance discretion under 5G 1.3 and the relevant application note 4A. Your Honor, respectfully, the . . . I disagree with that. The district court had everything in front of . . . that it . . . explicitly stated on the record that it had considered everything in front of it concerning Mr. Richardson's prior sentence in Missouri, the length of that sentence, the amount that he would serve that was undischarged on that sentence, the fact that it was in Missouri, the 3553A factors. The 5G 1.3's application note 4A was reprinted in Mr. Richardson's sentencing memo to the court, which the court acknowledged it had read, and the entire sentence . . . the entire sentencing hearing, which I was present for, revolved around the application of whether . . . actually, whether or not this . . . Mr. Richardson was going to receive a consecutive or concurrent sentence. But the district judge said this was independent. Correct. Is that consistent with the fact . . . well, if the Oklahoma offense led the Missouri judge to increase the sentence, then the Oklahoma Act would not be independent of the Missouri sentence. Is that correct? Well, Your Honor, it certainly wouldn't be fully independent from the Missouri sentence. I agree with that. If it increased the sentence in Missouri, then it's not independent. So, if that were the case, that it increased the sentence in Missouri, then the judge was laboring under a factual misconception. Now, maybe that can be reconciled if the judge didn't think it actually did increase the sentence in Missouri. But, can we . . . if the judge exercises discretion, based on a misconception of the facts, then don't we have to send it back down to the judge to get the facts right, and then make the decision? So, Your Honor, respectfully, I don't believe so. So, this standard is an abuse of discretion. The facts are reviewed for clear error. So, I think the facts would have to be absolutely unsupported by the record that the judge relied on in crafting the sentence. And that fact by the Oklahoma judge would be the essential finding that the Oklahoma offense did not affect the sentence in Missouri. And we would have to find that the judge clearly erred in saying it didn't affect the sentence. Is that your point? Correct, Your Honor. That is my point. And so, our point here is that this court absolutely can look at the record before it. I realize that the PSR for Missouri is not before it, but can look at the record before it and decide for itself, well, maybe we would disagree with the judge. But that's not—and agree with the judge on that point of this Missouri—the Oklahoma firearm was already punished in Missouri. And I do think that's a critical distinction here. I realize there's talk of relevant conduct specifically, and our position is that it was not relevant conduct. But even if it is, and even if there is some level of interplay between the two sentences, that does not necessarily mean that the judge's statement on the record, saying that it was independent and saying some punishment needed to be meted out for the firearm in Oklahoma, is wholly unsupported. This court can disagree. So you don't think that the fact that the Oklahoma offense was listed as offense conduct in the PSR in Missouri, you don't think that shows a clear error by the Oklahoma judge in saying that the Oklahoma offense was independent of the Missouri offense and that he had not received any punishment in Missouri for the Oklahoma offense? You don't think that shows clear error? Respectfully, no, Your Honor. And so what I think it shows is—and I think we don't dispute that the record from the Missouri case is, at the very least, up for dispute. So one can dispute and say—one can look at it and say, well, maybe he was punished. I think we certainly look at the record and say he absolutely was not punished. Let's pause there and just get the facts straight, which is he got a 182-month sentence in Missouri. 180 months were mandatory minimum. Correct. And so far as I know, nobody's pointed me to anything that says those extra two months had anything to do with an Oklahoma gun possession. Correct. Is that right? That's correct, Your Honor. All right. Now, taking it to 5G1.3, we arrive at D. Is that right? That's correct, Your Honor. And D says, if you're not A, B, or C, then it's up to you, District Judge, to decide whether or not the offense that's committed within your state is going to receive some independent time. Correct. And I think there was a lot of confusion in the district court about subsection B. Subsection B asks this question. Was the Missouri conduct relevant conduct to the Oklahoma conduct? Not vice versa, right? Correct. And that's not even part of this case. That's correct, Your Honor. And so the whole relevant conduct thing would be important under B if it were the other way around. But because it's not, we go to D, and D has no prescription whatsoever on any of that, but instead says, you, the district court, use your judgment according to the factors that we list in our note. Is that right? That's correct, Your Honor. And I do think that goes to my point that the district court did just that in this case. Again, the district court had references to 5G1.3D in the PSR, in Mr. Richardson's sentencing memorandum, and the sentencing hearing was all about essentially the judge's discretion to enter a concurrent, consecutive, or partially concurrent, partially consecutive sentence in that case. Obviously, Mr. Richardson asked for a fully concurrent sentence. We disagreed and asked for a partially consecutive sentence, and that's where, but, and I do think, Your Honor, that the judge's sentence in this case is actually pretty clear evidence that the judge was well aware of its discretion under 5G1.3D and applied that discretion under 5G1.3D in an incremental way so as to take into account Mr. Richardson's undischarged sentence in Missouri and only sentence, only have him serve part of that time, 10 months, consecutive to the sentence that he had already received in Missouri. And so, Your Honor, I do want to make one more point about specifically the, how this case lines up with previous statements that this court has made about discretion to district judges when exercising their discretion under 5G1.3D. And this court has made various statements about not needing to use magic words, not, the sentence just needing to be relevant to the sentencing factors, not needing to cite 5G1.3D, and I think most importantly, deferring to the district judge's discretion unless there's any indication in the record that the district court did not, any contrary indication in the record that the judge did not apply, did not know the law or apply the law to the facts at hand. And again, I think, given the record in this case and certainly the information that the judge had at its disposal, had at his disposal, and the incremental nature of the punishment for Mr. Richardson, I believe the evidence is very clear. And I think this case, all we're asking this court to do is rule in line with its previous statements about that deference to the district court in situations like this. If there are no further questions, I will reserve my time. Thank you. Section 5G1.3D does not give unfettered discretion to a district court. It gives fettered discretion. It requires the application of directives. Hurlick, this court, said you must apply those directives. The directives here require consideration of avoiding unwarranted disparities arising from the fortuity of interrelated conduct being sentenced in separate proceedings. No matter how you characterize this. What's the comparator group for disparities? It's people in his position, right? So, Your Honor, I don't believe this is the same as 3553A6. This is about the fortuity of interrelated conduct being sentenced in separate proceedings. It's about whether what happens if this had been rule 20 up to Missouri. Would that have given new facts for that judge to consider? Or would it have been the same sentencing? Or if he had fled but not fled out of the kind of artificial boundary of the federal court's jurisdiction, would that have been charged in the same indictment? Would it have been grouped together or grouped separately? It's not a question. We don't need to find some similarly situated person, but ask, are these differences just because we happen to be in two different courtrooms in two different proceedings? Okay, thank you. Thank you. I've got a question. Do you think the district court in Oklahoma clearly erred in saying that the sentence in Missouri was not affected by the Oklahoma offense, was not increased because the Oklahoma offense? I think that the district court clearly erred when it said that the possession of the weapon was independent of that proceeding. Well, that's irrelevant unless it affects to his sentencing, unless it affected the sentence in Oklahoma and in Missouri. And the judge, as Judge Phillips pointed out, at most, it could have increased the sentence by two months. Your Honor, I think that the way that we do federal sentencing, you consider a whole bunch of conduct and you come up with a total sentence that accounts for that conduct. Was it clear error to think that for the judge in Oklahoma to think that the Oklahoma offense likely had no influence on the sentence in Missouri? Was that clear error? Yes, Your Honor. And I can give you one particular reason why. Okay. With the backdrop of what I just explained, that sentences account for all of the relevant conduct, all of that offense conduct. There was no reason for the Missouri court to hold back because the Missouri court knew all the relevant facts about the Oklahoma firearm possession, but did not know that there was a pending charge in Oklahoma. It was not in the PSR. It said that there were no detainers. It didn't list that as a pending case. And so because of the way that federal sentencing works, the information in the pre-sentence report, and because there would have been no reason to hold back, yes, it's clear error to say that that was not one of the acts that was sanctioned in this global sentence that was handed out in Missouri. Do you have anything from the Missouri record? And if you've seen the PSR, it's pretty open to you. Do you have anything in the Missouri record where the district court there said, would be 180, but you had a firearm down in Oklahoma, I'm going up to 182? No, Your Honor, but I think if we look at how we do, he had a 924C. And if you look at the sentencing transcript in the Missouri case, the 924C on some level brought down the rest of his sentence. That proves the case, doesn't it? With a 924C, he can't get that plus two for the firearm. I mean, I think if we were here and you were asking me the same question about some quantum of drugs that were charged that was really part of that conspiracy, can we really say that the drugs that were charged, the small quantity in Oklahoma, was not part of the greater sentence in Missouri? Under that reasoning, I wouldn't be able to say that we can be sure that they were connected because the drug sentence was presumably lowered to make space for the 924C. That's what appears to have happened there. So I don't believe that's the right question. Thank you. Thank you. Case is submitted. Counselor excused. We're going to take a brief recess at this point.